UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESPERANZA MENDOZA o/b/o MANUEL DAVID MARTINEZ,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>Defendant. | Case No. 1:23-cv-00664-HBK<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY [2]<br><br>(Doc. Nos. 15, 21) |

Esperanza Mendoza ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Manuel David Martinez's application for supplemental security income and disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 15, 21-22). For the reasons set forth more fully below, the Court denies Plaintiff's motion for summary judgment, grants

---

[1] The Court has substituted Martin O'Malley, who has been appointed the Acting Commissioner of Social Security, as the defendant in this suit. *See* Fed. R. Civ. P. 25(d).

[2] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 6).

Defendant's motion for summary judgment, and affirms the Commissioner's decision.

## I.     JURISDICTION

Plaintiff protectively filed for supplemental security income and disability insurance benefits on August 9, 2018, alleging a disability onset date of December 24, 2017. (AR 267-81). Benefits were denied initially (AR 91-114, 143-48), and upon reconsideration (AR 115-40, 153-59). Plaintiff appeared at a telephonic hearing before an Administrative Law Judge ("ALJ") on February 2, 2021. (AR 36-69). Plaintiff was represented by counsel, and testified at the hearing. (*Id*.). On March 1, 2021, the ALJ issued an unfavorable decision. (AR 38-60). On February 11, 2022, Plaintiff's mother, Esperanza Mendoza, submitted a request for substitution of party upon the death of Plaintiff. (AR 25-26). On March 16, 2022 the Appeals Council denied review (AR 15-20). The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II.    BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 40 years old at the time of the hearing. (*See* AR 311). He received his GED. (AR 316). He lived with his stepfather, his mother, and his 14 and 18-year-old children at the time of the hearing. (*Id*.). Plaintiff had work history as a corrugator operator. (AR 76-77, 86). Plaintiff testified that he was unable to work because of his weight, and a "chipped" bone in his knee. (AR 77). He reported he gets out of breath just walking to the bathroom and back, his knees are in pain, it's hard to stand up because of his weight, and he has lower back pain. (AR 77-78). Plaintiff testified that he can sit for 30-40 minutes before he has to stand up and stretch or lay down, and he has swelling in his lower extremities that requires him to move them around every 5-10 minutes or lay flat with his feet elevated. (AR 78-81). He reported no difficulties manipulating his upper extremities and no side effects from medication. (AR 84-85).

## III.   STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the

Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the

analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 24, 2017, the alleged onset date. (AR 44). At step two, the ALJ found that Plaintiff has the following severe impairments: obesity; right knee arthritis; degenerative disc disease; and small fiber neuropathy. (*Id.*). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 46). The ALJ then found that Plaintiff has the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) and includes the ability to occasionally and frequently lift 10 pounds, stand/walk a total of 2 hours and sit about 6 hours in an 8-hour workday. He can only occasionally use foot controls and with the right dominant lower extremity, never climb ladders, ropes, scaffolds, occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl.

(AR 47). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 53). At step five, the ALJ found that considering Plaintiff's age, education, work

experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including telemarketer, document preparer, and surveillance system monitor. (AR 54). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from December 24, 2017, through the date of the decision. (AR 55).

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following two issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims in formulating the RFC; and

2. Whether the ALJ's RFC determination is supported by substantial evidence because the ALJ failed in his duty to complete the record and obtain an opinion of Plaintiff's RFC from an examining physician.

(Doc. No. 15 at 6-16).

## VII. DISCUSSION

### A. Symptom Claims When Formulating RFC

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ]

6

gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

     Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. (AR 48-49). Plaintiff generally argues the ALJ "simply proceeded to summarize the treatment records that detail Plaintiff's reported symptoms, objective findings, and treatment plans." (Doc. No. 15 at 9 (citing *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("providing a summary of medical evidence in support of a [RFC] finding is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible.")). This argument is unavailing.

     First, the ALJ found Plaintiff's individual symptom claims are not consistent with the medical evidence. (AR 49). Medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain is not supported by objective medical evidence). Plaintiff argues the ALJ "failed to indicate which of Plaintiff's allegations are not supported by objective findings." (Doc. No. 15 at 9). However, the ALJ detailed normal objective findings across the relevant adjudicatory period, in contradiction of Plaintiff's claims of entirely disabling limitations. For example, as to his claimed shortness of breath and morbid obesity, the ALJ cited normal chest x-rays, normal

pulmonary testing and left ventricular ejection fraction, and little to no lower extremity edema (AR 49, 663, 884-85, 906-07, 921-25, 942, 974, 982). As to his claimed low back and right knee pain, the ALJ acknowledged progressive degenerative changes in right knee x-rays, but noted no lumbar spine imaging in the longitudinal record, normal straight leg raise testing, some limited range of motion, unremarkable or minimally diminished motor strength testing, mostly normal gait, and normal bilateral lower needle electromyography exam without evidence of lumbar radiculopathy. (AR 50, 461-62, 466-67, 471, 475-76, 480-81, 484-85, 490, 495-96, 544-45, 546, 593-94, 600, 605, 618, 675-76, 680, 685, 690, 695, 705, 713, 723-24, 739 (right knee x-ray showing moderately advanced degenerative osteoarthritis with moderately severe loss of medial tibiofemoral joint space), 996, 1001, 1013, 1018, 1156-57, 1161-62, 1172-73). Thus, when viewing the record as a whole, the ALJ explicitly recognized evidence in the record that could be considered favorable to Plaintiff and nonetheless found the severity of his symptom claims were inconsistent with the objective medical evidence. (AR 48-52). "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

Second, the ALJ found Plaintiff's treatment notes consistently included pain complaints, but the "pain intensity varied and in essentially all treatment notes, the claimant was described as reporting adequate pain control." (AR 52). The Court notes that it may decline to consider this issue as Plaintiff fails to identify or challenge this specific reason for discounting Plaintiff's symptom claims in her opening brief. (*See* AR 23); *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d at 1161 n.2 (9th Cir. 2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Regardless, a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations. *See Tommasetti*, 533 F.3d at 1040; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits).

8

Here, the ALJ cited ongoing reports throughout the record detailing the effectiveness of medication in treating Plaintiff's symptoms, and ultimately found "it can be presumed the claimant's medication regimen was mostly sufficient in controlling symptoms."  (AR 51, 655 (reporting knee pain relieved by medication), 674 (pain level 2/10 with medication), 683 (pain level 4/10 with medication), 686 (able to function well and no adverse side effects from medication), 686 ("In regard to medications the patient meets the 4 A's of pain management including good Analgesic effects with current medication regimen, increased Activities of daily living with the use of medications, no significant Adverse side effects, and no concern for Aberrant behavior."), 691 (same), 696 (same), 721 (same), 1011 (pain level 2/10 with medication), 1016, 1162 ("patient reports doing well and has adequate pain control with current pain regimen), 1170 (pain level 4/10 with medication), 1175 (mild pain level with medications).  The ALJ additionally noted that "importantly, the claimant continued essentially on a medication management regimen that remained mostly unchanged (with knee injections on occasion that included platelet-rich plasma injections, and regular physical/aqua therapy from February 2019 into July 2020 with some level of reported benefit, as well as diclofenac gel added by a primary care provider in February 2020)."  (AR 51).  Based on the foregoing, effective control of Plaintiff's symptoms with medication was a clear, convincing, and unchallenged reason for the ALJ to discount his symptom claims.

Third, the ALJ noted that Plaintiff's reported activities of daily living were "somewhat contradictory to [his] allegations/testimony" and "[a]t no time, did records state anything other than the claimant [was] able to drive, perform personal care, cook, and clean, until a visit at the end of July 2020 when he reported he could not clean (then this was repeated in December 2020)."  (AR 50-51, 489 (answering "yes" to whether he is able to clean, drive, cook, and bathe/dress), 495 (same), 686 (noting plaintiff is able to do activities of daily living without much pain), 691 (same), 696 (same), 699 (answering "yes" to whether he is able to clean, drive, cook, and bathe/dress), 721 (able to do activities of daily living without too much pain), 1012, 1172 (reporting not able to clean, but can drive, cook, and bathe/dress).  As noted by Plaintiff, a claimant need not be utterly incapacitated in order to be eligible for benefits.  *Fair v. Bowen,* 885

F.2d 597, 603 (9th Cir. 1989); *see also Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a). Plaintiff argues the ALJ did not provide the requisite explanation for how Plaintiff's ability to perform "limited activities" supported the "ability to perform work on a regular and continuing basis." (Doc. No. 15 at 9-11).

Regardless of evidence that could be viewed more favorably to Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's own consistent reports to medical providers that he is able to cook, clean, drive,[3] perform personal care, and attend a 90-minutes church service weekly, was inconsistent with the severity of his allegations including that he gets out of breath just walking to the bathroom and can only sit 30-40 minutes at a time. (AR 48-52); *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *see also Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence); *Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). Moreover, even assuming, *arguendo*, that the ALJ erred in making this finding, any error is harmless because, as discussed above, the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63 (9th Cir. 2008).

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims when formulating the RFC.

---

[3] As noted by Defendant, the ALJ also noted that Plaintiff testified he does not drive and has never had a driver's license, but the record includes Plaintiff's reports that he has been in jail twice for driving with a suspended license and his reports that that he drove himself to an evaluation because he would have been late if he took the bus. (AR 48, 71-72, 536 (reporting he is able to drive), 580, 582). While not addressed by Plaintiff in the opening brief, the Court notes an ALJ may consider inconsistent statements by a claimant in assessing his or her reported symptom claims. *Tonapetyan*, 242 F.3d at 1148; *see also Smolen,* 80 F.3d at 1284 (in evaluating the credibility of symptom testimony, the ALJ may utilize ordinary techniques of credibility evaluation).

**B. Duty to Develop / RFC**

"The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)) (internal quotation marks omitted). This duty is "triggered when the evidence is ambiguous or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001); *Thomas*, 278 F.3d at 958. However, the plaintiff bears the burden of presenting evidence in support of her alleged disability. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

As an initial matter, Plaintiff generally argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ "failed in his duty" to obtain an "updated medical opinion" from an "examining physician." (Doc. No. 15 at 5-8). Defendant argues that substantial evidence supported the ALJ's assessment of the opinion evidence and the RFC determination, and the ALJ was not required to further develop the record. (Doc. No. 21 at 4-9). The Court agrees. The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity.").

Here, Plaintiff correctly notes that "[i]n formulating an RFC, an ALJ cannot interpret raw medical data." (Doc. No. 15 at 6 (citing *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). However, Plaintiff entirely fails to specify what "raw medical data" was purportedly interpreted in this case. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir.

11

2015) (ALJ is "responsible for translating and incorporating clinical findings into a succinct RFC."); *Bufkin v. Saul*, 836 Fed. App'x 578, 579 (9th Cir. 2021) ("Contrary to [plaintiff's] argument, the ALJ did not rely on her 'lay interpretation' of medical evidence. Rather, the ALJ simply summarized the medical evidence from [physicians]; she did not interpret any x-rays or test results directly. ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination."). Perhaps more notably, Plaintiff does not specifically argue that the ALJ improperly considered the opinion evidence under the new regulations; nor does she identify any specific functional limitations that were not properly accounted for in the assessed RFC. *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing); *see also Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide [reasons] for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"). Rather, as noted by Defendant, the ALJ considered 800 pages of medical record and treatment notes in the medical record, including evidence that could be considered more favorable to Plaintiff; the prior administrative medical findings of the reviewing state agency doctors; and the treating opinions of Raquel Ramos, M.D. (Doc. No. 21 at 5). As discussed in detail *supra*, the ALJ also properly discounted Plaintiff's symptom claims. For the foregoing reasons, the Court finds no error in the ALJ's assessment of the RFC based on all relevant evidence in the record. (AR 49-53); *see Bayliss*, 427 F.3d at 1217.

Next, Plaintiff argues the ALJ had a duty to order an "updated" medical opinion in order to resolve alleged "inconsistencies" in the evidence.[4] (Doc. No. 15 at 7 (citing 20 C.F.R. §

---

[4] In reply, Plaintiff states that Defendant "argues that the ALJ is permitted to rely on the opinions of the state agency consultants" and contends this "wholly ignores the fact that Plaintiff's contentions were not addressing merely a passage of time, but that the opinions were inconsistent with the evidence as Plaintiff had provided evidence of changed circumstances to warrant a rebuttal of the presumption of continuing disability form the prior ALJ decision and provided no support for the ALJ's ultimate RFC determination." (Doc. No. 22 at 3). However, the Court is unclear how this argument is relevant to this Plaintiff as his opening brief does not assert any argument as to a prior ALJ decision, and the docket entry cited by Plaintiff in support of this argument is entitled "designation of counsel for service." *(See id*. citing Doc. No. 16); *Carmickle*, 533 F.3d at 1161 n.2.

12

404.1519a) ("When we will purchase a consultative examination and how we will use it.")). In support of this argument, Plaintiff first contends the ALJ "made repeated notations in her decision that the record did not contain sufficient information." (*Id.*). Defendant argues "it is simply not clear from Plaintiff's arguments and paraphrased citations what evidence was so ambiguous and inadequate to allow the ALJ to properly evaluate the evidentiary record." (Doc. No. 21 at 5-6). The Court agrees. Plaintiff cites only two of the allegedly "repeated" notations of "insufficient information" in the ALJ's decision. First, the ALJ summarized a July 2020 pain management visit where Plaintiff indicated he was awaiting weight loss surgery, but he was "unable to complete an ordered lumbar spine MRI due to his body habitus." (AR 50 (citing AR 997, 1137 (listing weight at 687 pounds in October 2020). The ALJ noted that "it was unclear whether the claimant would be precluded from the surgery because of this or whether it was just a suggested procedure." (AR 50). However, a plain reading of this "notation" indicates the ALJ was not identifying an inconsistency in the evidence or a lack of sufficient information to make a disability determination; rather, the ALJ was noting a lack of clarity in the reasoning provided by the physician as to whether the spine MRI was required in order for Plaintiff to pursue weight loss surgery. Second, Plaintiff cites, without any explanation or argument, the ALJ's evaluation of Dr. Ramos' May 2020 opinion as unpersuasive in part for lack of explanation in support of the opined limitations. (AR 53). Again, Plaintiff does not challenge the ALJ's finding that Dr. Ramos' opinion was unpersuasive. *See Carmickle*, 533 F.3d at 1161 n.2. Under the new regulations, the ALJ is required to consider both the consistency and the supportability of each opinion in evaluating the persuasiveness of all medical opinions and prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b). Thus, any argument that the ALJ's proper consideration of these factors, in and of itself, triggered the ALJ's duty to resolve an "inconsistency" by ordering a consultative examination is misplaced.

Finally, Plaintiff argues the "ALJ simply accepted the opined limitations of the state agency medical consultant, without accounting for the inconsistencies contained therein, such as the consultant's conclusion that Plaintiff's complaints were supported but not fully accounting for the limitations addressed." (Doc. No. 15 at 7). However, Plaintiff fails to specifically identify

13

any "inconsistency" within the state agency medical opinions that the ALJ failed to "account for" in evaluating the opinions; nor does Plaintiff challenge the ALJ's finding that the state agency medical opinions were mostly persuasive. *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing). As argued by Defendant, "the ALJ properly considered the supportability and consistency factors in assessing the prior administrative medical findings of the state agency medical consultants consistent with the applicable regulations and the ALJ's RFC determination was consistent with their findings." (Doc. No. 21 at 6).

Based on the foregoing, the record was sufficient for the ALJ to make a non-disability determination, and the ALJ did not err by failing to order a consultative examination where the record was adequate and unambiguous. *See LeBeouf v. Saul*, 2020 WL 5702240, at *10-11 (E.D. Cal. Sept. 24, 2020) (ALJ was not required to request a consultative examination in part because the "record contained what appears to be Plaintiff's complete treatment records, which supported the ALJ's finding and did not present an ambiguity or inadequacy."); *see also Findley v. Saul*, 2019 WL 4072364, at *6, (E.D. Cal. Aug. 29, 2019) (same). After viewing the ALJ's reasoning in light of the record as a whole, the Court finds the RFC was supported by substantial evidence, and there was no ambiguity or deficiency in the record that would trigger the ALJ's duty to develop the record.

## VIII.  CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly considered Plaintiff's symptom claims, properly assessed the RFC, and did not err by failing to develop the record. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 15) is DENIED.

2. Defendant's Cross Motion for Summary Judgment (Doc. No. 21) is GRANTED and

the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.

3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:   July 23, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE